# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LISA F. HURT,

          Plaintiff,

    vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

Case No. 1:10-cv-353

Weber, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Lisa F. Hurt filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes and also moves the Court to remand this case pursuant to Sentence Six of 42 U.S.C. §405(g).  Pursuant to local practice, this case has been referred to the undersigned for initial consideration and a report and recommendation.  28 U.S.C. §636(b).  As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

On December 23, 2005 Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB) alleging a disability onset date of December 31, 2000, due to spondylosis, knee, elbow, and shoulder impairments.

(Tr. 235-238, Tr. 72-76). Plaintiff was born on March 3, 1964, thus, she was 36 years old at the time of her alleged disability and 45 years old at the time of the ALJ's decision. (Tr. 72). After Plaintiff's claims were denied initially and upon reconsideration, (Tr. 23-29, 33-34, 239-247), she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Tr. 36). On August 18, 2008, and April 16, 2009, evidentiary hearings were held in Cincinnati, Ohio, at which Plaintiff was represented by counsel. (Tr. 256-293). At both hearings, ALJ John T. Kelly III ("ALJ Kelly") heard testimony from Plaintiff. George Parsons, an impartial vocational expert ("VE Parsons"), testified at the second hearing.

On May 14, 2009, ALJ Kelly entered his decision denying Plaintiff's SSI and DIB applications. (Tr. at 11). ALJ Kelly's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements for disability insurance benefits on her alleged onset date of December 21, 2000, and continues to meet them through December 1, 2010.

2. There is no evidence that the claimant has engaged in any substantial gainful activity since her alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar spondylolisthesis and left lateral epicondylitis (20 CFR 404.1520(c) and 416.920(c)).

   ……………………

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

   ……………………

5. Careful consideration of the entire record shows that the claimant has the

residual functional capacity to perform a range of sedentary work, as set forth below.

……………………

6.     The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

……………………

(Tr. 16-21). Thus, ALJ Kelly concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB. (*Id.*).

Plaintiff's request for review by the Appeals Council was denied (Tr. 6-8), making the decision of ALJ Kelly the final administrative decision of the Commissioner.

**II. Applicable Law**

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's denial of benefits. Substantial evidence is "such relevant evidence as a reasonable mind might except as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Matthews,* 574 F.2d 359 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment preludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner

4

determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981).

The Commissioner is required to consider the individual's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If the individual suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk,* 667 F.2d at 528.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience.  *Farris v. Sec'y of HHS,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

Plaintiff has the burden of establishing disability by a preponderance of the evidence.  *Born v. Secretary of Health and Human Servs.* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir. 1971).  Once plaintiff establishes a prime facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy.  *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980).  To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well the job requirements.  *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978).  *See also Richardson v. Secretary of Health and Human Services,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam).  Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prime facie case of disability.  20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323.  *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a

generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson,* 735 F.2d at 964 (per curiam) (emphasis in original); *O'Banner,* 587 F.2d at 323. When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born,* 923 F.2d at 1174; *Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden of identifying other work the claimant can perform through reliance on a vocation expert's testimony to a hypothetical question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's mental and physical limitations. *Early v. Commissioner of Social Security,* 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Felisky,* 35 F.3d at 1036. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the

Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538.  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.  The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review."  *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record.  *Id.*  Whenever a claimant's complaints regarding symptoms of their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record."  *Id.*  The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.*  Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect.  *Id.*  In this case, Plaintiff alleges that the three identified errors at the fifth step of the sequential analysis require this Court to reverse the Commissioner's decision.

### III. Medical Record

On February 21, 2003[1], Plaintiff visited her family physician, Carl Hoyng, M.D., ("Dr. Hoyng") after injuring her back shoveling snow.  (Tr. 185).  Dr. Hoyng determined that Plaintiff's back was tender upon palpitation and that she had a decreased range of motion.  (*Id.*).  Dr. Hoyng prescribed 800 mg of ibuprofen, under the brand name Motrin for Plaintiff's pain.  (*Id.*).  On March 17, 2003, Plaintiff reported that she pulled a muscle in her left elbow picking up a heavy bucket of water.  (Tr. 184, 186).  Plaintiff was given a prescription for Bextra, a non-steroidal anti-inflammatory drug, and instructed to follow-up.  (Tr. 184, 186).  Plaintiff returned for follow-up examinations on April 18, 2003 and July 8, 2003.  On both occasions Dr. Hoyng noted Plaintiff's continued elbow pain and renewed her prescription for Bextra.  (Tr. 182-183).

On May 29, 2003, Plaintiff was examined by orthopedist, H. Brent Bamberger, D.O., F.A.O.A.O. ("Dr. Bamberger").  (Tr. 186-187).  Dr. Bamberger noted that Plaintiff had a full range of motion in her elbow without pain, but experienced tenderness upon palpitation.  (Tr. 186).  He diagnosed Plaintiff with left elbow lateral epicondylitis.  (*Id.*).  He also administered an injection of Kenalog and Lidocaine, and told Plaintiff to return on an as-needed basis.  (Tr. 187).

On April 21, 2004, Plaintiff was examined by consultative physician, Paul Martin, M.D. ("Dr. Martin"), after injuring herself while engaging in yardwork.  (Tr. 179).  Plaintiff reported that she was suffering from tennis elbow and inflammation.  (*Id.*).  Plaintiff also stated that she was experiencing chest pain and that she had popped a blood vessel in her leg.  (*Id.*).  Dr. Martin prescribed Motrin for Plaintiff's pain and Nexium for acid reflux.

---

[1] Although Plaintiff alleges a disability onset date of December 31, 2000, medical records do not begin until 2003.

(*Id*).

On August 9, 2004, Plaintiff went to Dr. Hoyng after twisting her ankle.  (Tr. 178).

Upon examination he noted gross swelling in Plaintiff's ankle and recommended that

she take Motrin for the pain.  (*Id.*).  On February 11, 2005, Plaintiff returned to Dr.

Hoyng for complaints of shoulder pain.  (Tr. 174).  He noted that Plaintiff's exam was

normal, except for tenderness in her lower spine and that she had decreased range of

motion.  (*Id*).  On December 9, 2005, Plaintiff presented to Dr. Hoyng with complaints of

leg, spine, and stomach pain.  (Tr. 172).  Imagining results on Plaintiff's legs and spine

were normal.  (*Id.*).  Dr. Hoyng diagnosed acid reflux and prescribed Nexium and

Motrin.  (*Id*).  He further recommended acupuncture and acupressure for Plaintiff's

spinal pain.  (*Id.*).

On October 10, 2006, Plaintiff saw Dr. Martin due to increased shoulder and low

back pain.  (Tr. 197).  Plaintiff reported that she suffered from "severe pain [that]

radiated to the left side."  (*Id.*).  Dr. Martin opined that Plaintiff had right shoulder

tendonitis, based on an x-ray that showed, "very minimal degenerative findings…[but]

no spur formation."  (Tr. 197-198).  Dr. Martin also found that Plaintiff had a decreased

range of motion in her back.  (Tr. 197).  He diagnosed first degree lumbar

spondylolisthesis, and degenerative disc disease/degenerative joint disease in the lower

spine.  (*Id.*).

On October 19, 2007, Plaintiff saw Dr. Hoyng for back pain.  (Tr. 216).  Plaintiff's

neurological exam was normal and Dr. Hoyng did not note any reduced range of motion

or tenderness in her back.  (*Id.*).  On January 18, 2008, Dr. Hoyng reported that Plaintiff

complained of pain and stiffness in her knees.  (Tr. 214).  He noted that both knees

were tender to palpitation. (*Id*). Following his examination Dr. Hoyng prescribed Motrin and Norflex. (*Id).*

On April 24, 2008, state agency reviewing physician, Michael Hartman, M.D. (Dr. Hartman), reviewed Plaintiff's file. (Tr. 199-204). Dr. Hartman concluded that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour work day, and sit about 6 hours in an 8-hour workday. (Tr. 200). He thought Plaintiff would be limited to occasionally pushing, pulling, and reaching with her right shoulder due to degenerative joint disease, and was limited in pushing or pulling with her lower extremities due to her lumbar degenerative disk disease. (Tr. 200-201). He concluded that Plaintiff should only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 201). Plaintiff had no visual or communicative limitations, but Dr. Martin opined that she should avoid concentrated exposure to hazards, such as machinery or heights. (Tr. 201-202). Dr. Hartman based his conclusions on the tendencies and reduced range of motion during Plaintiff's previous medical exams, her normal shoulder x-ray on October 19, 2007, and her activities of daily living. (Tr. 204). He determined that Plaintiff's complaints were only partially credible due to her relatively mild abnormalities. (*Id*.).

On September 17, 2008, due to a lack of objective medical evidence, ALJ Kelly requested that Plaintiff be evaluated by consulting physician, William Smith, M.D. ("Dr. Smith"). (Tr. 219-225). At the examination, Plaintiff reported that her pain level was 7 or 8 out of 10, but that it would rise to 10 if she bent or twisted. (Tr. 219). Plaintiff also reported that she could not squat, kneel, stoop, reach overhead, lie flat on her back, stand for more than 15 minutes, walk for more than 15 minutes, or lift more than a

11

gallon of milk. (*Id.*). Dr. Smith found that Plaintiff had full range of motion in her neck, shoulders, elbows, wrists, and fingers. (Tr. 220, 222-225). Plaintiff had full strength and sensation in both upper extremities, and normal grasp, manipulation, and fine coordination. (Tr. 220, 222-225). Plaintiff had reduced range of motion of the lumbar spine, which Dr. Smith characterized as "mild," and pain upon palpitation, but a normal range of motion in the cervical spine, hips, knees, and ankles. (Tr. 220-225). Dr. Smith diagnosed Plaintiff with lumbar spondylisthesis, but could not pinpoint the level of the spine and noted that she had 2 positive Waddell signs[2]. (Tr. 221). Plaintiff had no neurological deficits except for sensory changes on the left. (*Id.*).

Dr. Smith also completed a Medical Source Statement of Ability to do Work-Related Activities in connection with his assessment. (Tr. 226-231). He concluded Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit up to 6 hours during a workday in 2 hour increments; walk up to 1 hour, in 15 minutes increments; and stand up to 15 minutes at a time and for 1 hour total. (Tr. 226-227). Despite Plaintiff's reports that she could not reach overhead, the doctor placed no limitations on reaching, handling, pushing, or pulling. (Tr. 228). Dr. Smith did not think that Plaintiff would be able to operate left foot controls or a motor vehicle, but stated that she could occasionally operate right foot controls and did not need a cane. (Tr. 227-

---

[2] Waddell's signs are a group of physical signs that may indicate a non-organic or psychological component to chronic low back pain. There are five categories of signs: 1) tenderness tests: superficial and diffuse tenderness and/or nonanatomic tenderness; 2) stimulation tests: these are based on movements which produce pain, without actually causing that movement, such as axial loading and pain on stimulated rotation; 3) distraction tests: positive tests are rechecked when the patient's attention is distracted, such as a straight leg raise test; 4) regional disturbances: regional weakness or sensory changes which deviate from accepted neuroanatomy; and 5) overreaction: subjective signs regarding the patient's demeanor and reaction to testing. Any individual sign marks its category as positive. When three or more categories are positive, the finding is considered clearly significant. Gordon Waddell, John McCulloch, Ed Kummel, Robert Venner, *Nonorganic Physical Signs in Low Back Pain,* Spine, March/April 1980, at 117-125.

228).  He concluded Plaintiff should never climb, but could occasionally balance, stoop, kneel, crouch, and crawl.  (Tr. 229).  Dr. Smith also thought Plaintiff should avoid humidity, wetness, and extreme cold, and could only occasionally be exposed to unprotected heights, moving mechanical parts, extreme heat and vibrations.  (Tr. 230).  Dr. Smith concluded that Plaintiff was suffering from these limitations since 2000, and when asked in various places on the form to give the medical basis for his conclusion, Dr. Smith wrote, back pain and spondylothesis.  (Tr. 226, 228-231).

On January 20, 2009, Plaintiff was seen by Dr. Hoyng.  Plaintiff again reported problems with her back and decreased range of motion.  (Tr. 234).  Based on Plaintiff's subjective complaints of pain, Dr. Hoyng renewed her prescriptions for Motrin and Norflex.  (*Id.*).

### IV.  Plaintiff's Testimony at the Hearings

At Plaintiff's first administrative hearing, held on August 18, 2008, she testified that she could no longer work due to her lower back and pelvis pain, which causes her problems when climbing stairs, standing, walking, and performing routine maintenance activities, such as, mopping the floor.  (Tr. 259-260, 263).  Plaintiff also reported that she experiences pain in her spine.  (Tr. 263).

At Plaintiff's second administrative hearing, held on April 16, 2009, she testified that her lower back pain has increased since the last hearing and that she is not able to bend, reach, stand, sit, or walk as much as she used to.  (Tr. 272).  Plaintiff testified that she can only walk 50 yards without having pain in her legs.  (Tr. 274).  Plaintiff reported that the pain spreads out from her lower back and is mainly on the right side.  (Tr. 274).  Plaintiff also testified that she can only sit and stand for 15 to 20 minutes at a time

13

before she has to lie down.  (Tr. 273).  Plaintiff also reported that she experiences spasms in her lower back several times a day.  (Tr. 279).

Plaintiff also testified that her left calf and foot go numb when she tries to stand-up and that she can no longer put weight on it until she is able to straighten the leg out. (Tr. 275).  Plaintiff testified that, on occasion, her left arm and hand also go numb.  (Tr. 277).  As a result, Plaintiff cannot write or type or pick up items that have weight to them, such as, a pot of water.  (Tr. 278).  Plaintiff also testified that she has pain in both her knees.  (Tr. 275-276).  Plaintiff reported that the pain is located inside the knee and it feels like it is between the bone.  (Tr. 276).  Plaintiff testified that both of these impairments have become worse since the last hearing.  (Tr. 275-276).  Plaintiff testified that her medications included Motrin and Norflex.  (Tr. 278, 280).  Plaintiff reported that she takes Norflex twice a day and that it makes her tired.  (Tr. 280).

As to Plaintiff's daily activities, she testified that, due to her physical condition, she cannot perform simple household chores, such as, vacuuming, sweeping, or mopping.  (Tr. 281).  Plaintiff can put laundry in the washing machine, however, she cannot carry a laundry basket or put wet clothes in the dryer because she cannot bend over to get the clothes out.  (Tr. 281).  Plaintiff also testified that she does have a drivers license, but that because of her impairments, she chooses not to drive.  (Tr. 282). Further, Plaintiff testified that, when riding in a car, she can only sit for 20 minutes before she starts having pain in her lower back and legs.  (Tr. 284).

### V. Analysis

On appeal to this Court, Plaintiff assigns three errors in this case.  First, Plaintiff contends that ALJ Kelly improperly ignored a residual functional capacity questionnaire

("RFC") that was completed by a "treating physician," Dr. Martin, after the final hearing on April 16, 2009, and thus, pursuant to Sentence Six of 42 U.S.C. § 405(g), a remand is warranted.  Second, Plaintiff argues that ALJ Kelly inadequately assessed Plaintiff's pain and credibility.  Third, Plaintiff argues that ALJ Kelly erred when he relied on the vocational expert's testimony that Plaintiff's past job as a customer service representative should be classified as a "light job" rather than "sedentary".

### A.  Dr. Martin's RFC and Sentence Six Remand

Plaintiff's first assignment of error asserts that ALJ Kelly erred in not considering and affording significant weight to her "treating physician," Dr. Martin's RFC, that was completed on April 24, 2009, eight days after Plaintiff's second hearing on April 16, 2009, and faxed to ALJ Kelly on May 7, 2009.  (Doc. 5 at 2).  Plaintiff asserts that a remand is warranted due to the existence of new medical evidence that was contained in Dr. Martin's RFC that she submitted to the Appeals Counsel after ALJ Kelly closed the record.  (*Id.*).  Such an argument falls under the purview of Sentence Six of 42 U.S.C. § 405(g)[3].

Pursuant to that provision, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is material, and also establishes good cause for her failure to present the evidence to the ALJ.  *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.,* 899 F.2d 679, 681 (6th Cir. 1989).  "Material evidence is evidence that would likely change the

---

[3] Sentence Six of 42 U.S.C. § 405(g) provides in part:

> The court may…at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…

Commissioner's decision." *Bass,* 499 F.3d at 513 (citation omitted).  The Court notes that in this case Plaintiff seeks to introduce Dr. Martin's RFC, which provides evidence that is not new or material, but instead significantly inconsistent with the rest of Plaintiff's medical record.  For example, Dr. Martin stated that Plaintiff must use an assistive device to ambulate, either crutches or a cane (Doc. 5 at 12), however, no other doctor had previously made such a recommendation.  In fact, Dr. Smith, the state agency reviewing physician, affirmatively stated that Plaintiff did not need them in 2008.  (Tr. 227, 253).  Moreover, Dr. Martin himself noted that Plaintiff was able to ambulate normally at their 2006 visit and Dr. Hoyng noted the same at her 2007, 2008, and 2009 appointments.  (Tr. 197, 214-216, 234).

Dr. Martin also limited Plaintiff to grasping objects and fine manipulation to 10% of a work-day with her left hand and 20% with her right hand, however, there is no support for any limitation of this nature in the record.  (Tr. 254).  To the contrary, Dr. Martin previously noted that Plaintiff did not have any problems with fingering or grasping during Plaintiff's prior visits.  Dr. Smith opined in 2008 that Plaintiff's "grasp, manipulation, and fine coordination are normal," and noted no limitations.  (Tr. 179, 197, 220, 228).  If Plaintiff's condition has worsened, there is no evidence to support it except for this lone RFC of Dr. Martin.

In addition, Dr. Martin's conclusion that Plaintiff could only occasionally lift less than 10 pounds was also inconsistent with her conservative treatment, her mild abnormalities, and the fact that Dr. Smith concluded that Plaintiff could lift up to 20 pounds.  (Tr. 200, 225).  Dr. Martin provided no support for his conclusions about her lifting ability, the length of time she could sit, stand, or walk, and his postural limitations.

He merely checked boxes that provided her abilities were affected.  Dr. Martin also relied on x-rays to support his conclusions, however, he failed to note their findings with particularity and Plaintiff did not include them in the administrative record.  *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").  Therefore, Dr. Martin's RFC contains no "new" or "material information" but is instead inconsistent with the objective evidence provided in Plaintiff's record as a whole.

Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-231 (6th Cir. 1990) (affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).  Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence.  *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

Plaintiff also fails to establish good cause why Dr. Martin's RFC could not have been completed earlier and presented before ALJ Kelly.  According to her medical records, Plaintiff last saw Dr. Martin on October 10, 2006, although, said RFC was not completed until April 24, 2009, more than two years later.  (Tr. 197, 255).  Presumably she could have obtained such an RFC regarding her physical condition prior to the second hearing.  Plaintiff offers no reasons for failing to obtain the RFC, instead, she relies on *McClesky v. Commissioner,* 606 F.3d 351, 353-354 (7th Cir. 2010), which she

claims stands for the proposition that there is nothing wrong with submitting evidence to an ALJ after a hearing.  (Doc. 5 at 3).

The Court disagrees with Plaintiff in that it appears the court in *McClesky* acknowledged the decision to consider evidence submitted after an ALJ closes the record was "*indeed discretionary*," and that it could not "find any cases ruling on when an ALJ's refusal to consider new and material evidence first submitted after the hearing might be an abuse of discretion"[4].  *Id.  McClesky,* 606 F.3d at 353-354 (emphasis added).  Further, while an ALJ has the ability to "reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence," the regulations describe this authority in discretionary terms.  20 C.F.R. § 404.944.

The Court also takes issue with Plaintiff's claims that Dr. Martin was a "treating physician."  The Social Security regulation pertinent to determining whether a physician may be considered a "treating physician" states, "the ALJ must consider the examining relationship between the medical source and claimant and the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship.*"* 20 C.F.R. § 404.1527(d)(2).  In Plaintiff's medical records there is no evidence that Dr. Martin treated Plaintiff beyond her two appointments on April 21, 2004, and October 10, 2006.  (Tr. 179, 197).  Plaintiff testified that while Dr. Martin works in the same office as Dr. Hoyng, it was Dr. Hoyng who she saw regularly.  (Tr. 263).  Moreover, Plaintiff consistently named Dr. Hoyng as her health care provider in her disability forms, and never once listed Dr. Martin as her doctor.  (Tr. 104-105, 118-119, 130-131, 158-159, 165-168).  The Court also points out that because Dr. Martin

---

[4] Further, the Court notes that as a Seventh Circuit case, *McClesky* does not have precedential value to this Court.

18

wrote that the description of the symptoms and limitations in the RFC were "per history from patient," it appears as though his RFC assessment appears to have been based on the Plaintiff's subjective complaints rather than objective medical evidence. (Tr. 254).

Therefore, based upon Dr. Martin's RFC's inconsistencies, his lack of "treating" status, his use of Plaintiff's subjective complaints, and 20 C.F.R. § 404.944, the Court finds that Plaintiff's argument does not have merit, and thus, a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not appropriate at this time. Of course, to the extent that Plaintiff has new evidence that her condition has worsened, she is free to submit a new application for benefits. *See, e.g., Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 685 (6th Cir. 1992). It is the function of this Court only to review whether the "new" evidence warrants remand under Sentence Six of 42 U.S.C. § 405(g). In this case it does not.

### B. Credibility Assessment and Evaluation of Pain

Plaintiff's second statement of error asserts that ALJ Kelly erred in his credibility finding. Plaintiff asserts: (1) ALJ Kelly erred when he evaluated Plaintiff's credibility and her subjective complaints of pain without considering Dr. Martin's RFC; and (2) ALJ Kelly erred when he considered the lack of objective medical findings to evaluate Plaintiff's credibility. (Doc. 5 at 4). Plaintiff relies on 20 CFR 404.1529(c)(2) which notes that the Commissioner will not reject the subjective complaints based on a perceived lack of objective abnormalities alone.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record.

*Jones,* 336 F.3d at 475.  However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *Id.* at 476.  (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony.  *Warner,* 375 F.3d at 392.

In this matter, ALJ Kelly noted various factors in his decision that caused him to question Plaintiff's credibility.  For instance, he noted that Plaintiff has not always been fully compliant with treatment – (i.e. Plaintiff admitting that she currently has no treatment program for her pelvic problems but rather just does home exercises).  (Tr. 263).  Further, ALJ Kelly pointed out that Plaintiff claimed she was disabled in December 2000, but medical records do not begin until March 2003, and Plaintiff continued to perform some work until 2005.  (Tr. 16, 102).  Moreover, there are instances where Plaintiff injured herself after her alleged disability onset date doing physically demanding activities including: shoveling snow, lifting a heavy bucket of water, and trimming bushes in 2003, as well as yard work in 2004.  (Tr. 16, 19).  Plaintiff has previously reported, in 2006, that she lives independently in a house with her boyfriend and engages in activities such as: cleaning, shopping, cooking, handling her finances, doing laundry, caring for pets, and grooming herself despite her allegations of

20

severe weakness and fatigue. (Tr. 122-126, 140-142, 261). Plaintiff also reported that she participates in the following hobbies: gardening, reading, painting, and crafts. (Tr. 126, 143). However, at the hearing Plaintiff testified that she does not vacuum, sweep, or mop and cannot move the laundry to the dryer or carry the basket. Unfortunately for Plaintiff, her medical record does not support this drastic change in Plaintiff's abilities. The Court notes that Dr. Martin's RFC would not have altered these facts.

ALJ Kelly found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that Plaintiff has established by sufficient evidence that she suffers from the following "severe" impairments: lumbar spondylolisthesis and left lateral epicondylitis. (Tr. 16). However, in reviewing the lack of objective medical evidence, ALJ Kelly also found that Plaintiff's statements concerning the severity, intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they lacked support from the record as a whole. (Tr. 18).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Here, ALJ Kelly asserted that based on a consideration of the entire case record, Plaintiff barely made out a severe impairment. (Tr. 18). The Court notes that Plaintiff's diagnosis of lumbar spondylolisthesis was not confirmed by medical imaging or diagnostic testing, her back pain was never a consistent complaint, and her doctor visits were generally more focused on new problems each time – insect bites, headaches, an ankle injury, tennis elbow – rather than any debilitating condition. Moreover, as ALJ

Kelly notes, no doctor ever recommended that Plaintiff see a back specialist, neurosurgeon, pain specialist, or even a physical therapist, contrary to her allegations of debilitating back pain.  (Tr. 19).  *Crouch v. Sec'y of Health & Human Servs.,* 909 F.2d 852, 856-57 (6th Cir. 1990) (minimal clinical findings and absence of significant neurological deficits support a rejection of the allegation of disabling pain).  There also was never a residual functional capacity assessment completed from Dr. Hoyng, her treating physician.

Therefore, because ALJ Kelly found a lack of objective medical evidence and inconsistencies with Plaintiff's testimony regarding the extent of her pain and limitations, it was permissible for him to discredit Plaintiff's testimony about the severity of her symptoms.  Furthermore, as provided above, Dr. Martin's assessment was inconsistent with the record as a whole, conclusory, lacked objective support to back up his claims, and at odds with his very limited treatment history of Plaintiff, and thus, would not have altered ALJ Kelly's determination of Plaintiff's credibility.  As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Kelly's decision to discredit Plaintiff's statements about the severity of her symptoms.

### C.  Vocational Expert's Testimony

Plaintiff contends in her third statement of error that ALJ Kelly erred when he relied on VE Rogers' testimony and classified Plaintiff's former job as a customer service representative "sedentary" instead of a  "light job," thus, qualifying Plaintiff to become re-employed as such.  Plaintiff argues that based on the requirements of said position they prevent her from seeking this type of job.  However, the Court notes that

ALJ Kelly also pointed out that even if Plaintiff could not perform her previous job as a customer service representative, VE Rogers identified a significant number of jobs in the regional economy that Plaintiff could perform including: telemarketer (2,116 positions regionally), and general clerical jobs. (3,417 positions regionally). (Tr. 290-291). Therefore, based on the large number of jobs Plaintiff remains eligible for, Plaintiff's argument does not have merit.

## III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT:**

1.  The Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**;

2.  Plaintiff's motion to remand this case under Sentence Six of 42 U.S.C. §405(g) be **DENIED**; AND

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

_s/Stephanie K. Bowman_____
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

LISA F. HURT,

      Plaintiff,

    vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:10-cv-353

Weber, J.
Bowman, M.J.

**<u>NOTICE</u>**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).